# Mechling's Appeal.

2g    157.
36 SC ²161
d 36 SC ²165

1. The personal estate of a son who dies unmarried, without heirs, and leaving a widowed mother, vests absolutely in the mother, and she is entitled to administration upon his estate.

2. A prospective agreement by a widowed mother, who was entitled absolutely to the personal estate of her deceased son, without consideration, to release the administrator, and directing him to pay over, at a distant period, to the brothers and sisters of her deceased son any assets left, made in ignorance of the value of the personal estate, is invalid.

3. A gift, is a contract executed, and delivery of possession is of the essence of the title.

APPEAL of George Mechling, administrator of Jacob Painter, deceased, from the decree of the Orphans' Court of *Westmoreland county*, distributing the balance of said estate in his hands.

The facts fully appear in the opinion of the court.

*Cowan*, for appellant, cited *Delamater's Estate*, 1 Wh. 362; *Yard* v. *Patton*, 1 H. 278; *Bunn* v. *Winthrop*, 1 Johns. Ch. 329; 1 Bouv. Bac. Ab. 165; *Campbell's Estate*, 7 Barr, 100; *Steinhause* v. *Witman*, 1 S. & R. 438; *Hart* v. *Porter*, 5 Id. 201; *Hessner* v. *Hein*, 8 Id. 178; *Hill* v. *Spencer*, Amb. 641; 2 Sto. Eq. 433.

*Marchand* and *Foster*, cited 2 Bl. Com. 441; 2 Kent, 438; Chit. Cont. 52; 7 Barr, 100; *Hall* v. *Marsten*, 17 Mass. 575; *Southampton* v. *Brown*, 6 B. & C. 718; *Pearson* v. *Pearson*, 7 Johns. 26; *Collon* v. *Missing*, 1 Mad. Ch. R. 76; 1 Dyer, 49, a; S. P.

The opinion of the court was delivered, February 7, 1859, by
READ, J.—Jacob Painter, died in November, 1855, intestate, unmarried, and without issue, leaving a mother, Susannah Painter, and nine brothers and sisters, of whom five or six were minors at the time of his death. By the law of Pennsylvania, the personal estate of the decedent vested in his mother absolutely, who was also entitled to letters of administration upon the estate of her son.

By the consent of the mother, letters of administration were granted to George Mechling, and upon the 31st December, 1855, an agreement was entered into between the administrator and the mother, which is the subject of the present contention.

This agreement is in these words:—

·"*Whereas*, Jacob Painter, Esq., late of Hempfield township, Westmoreland county, Pennsylvania, departed this life intestate, leaving no issue, but a mother, sisters and brothers living. The said Jacob Painter left a considerable personal estate at his death, which, by the laws of Pennsylvania, would descend and come to his mother, Susannah Painter, (widow;) and *whereas*, by consent of said Susannah Painter, George Mechling, of Hempfield township, lately took out letters of administration on the estate of Jacob Painter, deceased, whereby the personal assets of said deceased are now in the hands of said G. Mechling, administrator. *And now this agreement witnesseth*, That the said Susannah Painter, (widow,) has this day agreed, and doth hereby agree with said George Mechling, administrator, as aforesaid, · that he proceed as soon as convenient, and purchase three sets of marble gravestones, with proper inscriptions thereon, and have them properly set to the graves of her deceased husband, John Painter, and her sons, Jacob and Christopher Painter; and whatever the expenses may be for them, and in erecting the

same, the said Susannah agreeing that the said administrator shall pay the said expense out of said estate; and the said Susannah Painter hereby further agreeth with the said George Mechling, administrator as aforesaid, that he, the said administrator, paying her, in addition to the above expenses, when the estate is finally settled up, if there be that sum left, after all expenses in settling, the sum of $300, for which sum paid her at the time aforesaid, if proper assets left, I now hereby covenant and agree · by these presents, to release, acquit, and forever discharge the said administrator, his heirs, executors, and administrators, of and from the said Jacob Painter's estate, of all accounts, reckonings, claims and demands whatever, for or by reason thereof. *And further*, I hereby agree with the said administrator, after said sum of $300 paid to her, any assets left, I hereby agree and direct the said George Mechling, administrator aforesaid, to pay the same over to the brothers and sisters then living, share and share alike, of the said Jacob Painter, deceased, &c. And for the true performance of all and every the covenants and agreements aforesaid, each of the said parties bindeth themselves, their heirs, executors, and administrators, and every of them, by these presents. *In witness whereof*, the parties to these presents have hereunto set their hands and seals this 31st day of December, a. d. 1855.

       " Susannah Painter, [l. s.]
       " George Mechling, [l. s.]
 " Sealed and delivered in presence of
  " Harriet Porter."

Mrs. Painter married John Myers, and gave the administrator two receipts for money on account of this agreement; the first dated 22d February, 1856, for $50, and the second, on the 2d April, 1856, in these words:—

" In pursuance of an agreement in writing, made the 31st day of December, 1855, with George Mechling, administrator of my son, Jacob Painter, deceased, I hereby acknowledge to have received from the said administrator, on the said agreement, the sum of $50, including all the personal property which was of said deceased, (excepting the gold watch,) which is in part of the moneys payable me, by said agreement with the administrator, when the estate is settled up, &c.

         " Susannah Painter.
 " Witness present,
  - " Maria Anna Painter."

Sometime after this receipt, Mrs. Myers gave the administrator, Mechling, notice not to pay over any portion of the estate in his hands to her children, according to the agreement of the 31st December, 1855, and that she revoked the same.

[Mechling's Appeal.]

The administrator settled his account to November Term, 1856, and by the auditor's report, it appears that there was in the administrator's hands, the sum of $2479.55, which, after deducting the expenses, left a clear balance of $2147.05 in addition to the $200 paid on account of Mrs. Myers.

The Orphans' Court reversed the report of the auditor, giving the cash balance to George Mechling, Esq., in trust for the brothers and sisters of the said Jacob Painter, deceased, and ordered the same to be paid to Mrs. Myers, from which decree the administrator or trustee appealed to this court.

It appears, therefore, that on the 31st December, 1855, the clear personal estate to which the mother was entitled, amounted to $2347.05, and that she was ignorant of its value; for the agreement carefully provides, that the sum of $300 is only to be paid her, if there be that sum left, and the administrator ran no risk, for all that he agreed to do was to pay her with her own money, if that money held out. The result was, that if after the estate was finally settled up, he paid her *then* $300 (if proper assets left) of her own property, she was to release him from all claims and demands, on account of an estate, the whole of which belonged to her.

In the same ignorance of the true amount of her estate, she says, "I hereby agree with the said administrator, after said sum of $300 paid to her, of any assets left, I hereby agree and direct, the said G. Mechling, administrator aforesaid, to pay the same over to the brothers and sisters *then* living, share and share alike of the said Jacob Painter, deceased," &c.

It is clear, then, from the face of this paper, which is the only groundwork of the claim of the appellant, that the appellee was ignorant of the amount of property vested in her by the death of her son. The administrator did not profess to know, and his account was not filed for nearly eleven months afterwards. When, therefore, she prospectively agreed to release the administrator, and directed him to pay over at a distant period, to the brothers and sisters then living of her son, any assets left, she did so in ignorance of the most material fact—the value of the personal estate which was thus the subject of future disposition.

Such an arrangement between a trustee and *cestui que trust*, could not be sustained for a moment, and its invalidity vitally affects the voluntary direction to pay to the brother and sisters of her son, given in palpable ignorance of the extent and value of her interest in the estate of the decedent.

The cases cited by the counsel for the appellant, were correctly ruled by this court, but we do not think them applicable to the present case. In *Delamater's Estate*, 1 Wharton, 362, the executed transfer was an irrevocable gift of the stock; and as no

fraud was proved, the court refused to cancel the assignment and transfer. *In re Campbell's Estate*, 7 Barr, 100, Chief Justice Gibson said: "The notes in question could have been discharged only by a sealed release, or a parol gift of them. The disposition insisted on by the accountant, was neither. *A gift is a contract executed;* and as the act of execution is delivery of possession, it is of the essence of the title." In *Yard* v. *Patton*, 1 Harris, 278, there was a consideration to support the agreement, which the court refused to cancel, the parties perfectly understanding what they were doing, and acting free of any influence springing from falsehood, fraud, or misapprehension.

The words in this paper are simply a direction to pay at a future period, an indefinite amount, which may or may not exist. It is executory only, and without consideration. It is not an assignment, nor is it in terms or in spirit a declaration of trust, and yet the court is called upon to enforce it, although the appellant professes to desire to be left to the common law.

The mother is by law entitled to the personal estate of her son absolutely, but to her legal claim the appellant interposes, not an assignment, or transfer of it, but a voluntary executory paper, without consideration. This is a matter of equitable consideration entirely, and is cognizable in the Orphans' Court, which is a court of equity. The appellant must make out his equitable right to this money, in opposition to the legal claim of the mother, and in this we have already said he has not succeeded.

We are aware that voluntary trusts of personalty have of late years found much favor in the English Court of Chancery; and that a series of cases, beginning in 1851, have established there, that a valid trust "arose where there was a complete indication of a definite intention to part with property in favor of another person, it being quite immaterial, whether that other person was a volunteer, or took for a valuable consideration, and also, whether the intention of the settler was communicated to the *cestui que trust* or not." *Forbes* v. *Forbes*, 30 Law Times Rep. 176, (Vice Chancellor Wood, November, 1857.) See also *Moore* v. *Daiton*, 7 Eng. Law & Eq. R. 134; *Kekewich* v. *Manning*, 12 Id. 120; *Gray* v. *Gray*, 13 Id. 154; *Patterson* v. *Murphy*, 17 Id. 187; *Voyle* v. *Hughes*, 23 Id. 271.

But this must be taken with the pertinent qualification, stated by Lord Justice Knight Bruce, in *Kekewich* v. *Manning*, 12 Eng. Law & Eq. R. 126: "For as, upon the one hand," says the Lord Justice, "it is on legal and equitable principles we apprehend clear, that a person *sui juris*, acting *freely, fairly*, and *with sufficient knowledge*, ought to have, and has it in his power to make, in a binding and effectual manner, a voluntary gift of any part of his property, whether capable or incapable

[Sterling *v.* The Commonwealth.]

of manual delivery, whether in possession or reversionary, and howsoever circumstanced; so on the other hand, it is as clear, generally, if not universally, that a gratuitously expressed intention, a promise merely voluntary, or, to use a familiar phrase, *nudum pactum*, does not (the matter resting there) bind legally or equitably."

Under any aspect of the present case, we do not think that Mrs. Myers made a valid and binding declaration of trust in favor of the brothers and sisters of her deceased son; and, of course, the decree of the Orphans' Court must be affirmed.