## Conrad, Appellant, *v.* Conrad.

*Equity—Findings of fact—Evidence—Review.*

The findings of fact by the trial judge in an equity case, if supported by competent, and, if believed, sufficient testimony, will not be reversed by the appellate court in the absence of manifest error.

*Decedents' estates—Family settlement—Uncle and nephew—Confidential relation.*

Where an uncle and nephew who are the sole next of kin and heirs at law of a woman who is the mother of one of them, and the grandmother of the other, enter into an agreement in writing to distribute the estate of the decedent in accordance with an unsigned paper purporting to be a will of decedent, and agree in the paper that the uncle shall take out letters of administration, and the nephew knows at the time of the agreement that he would only get one-sixth of the estate under it, while he would get one-half under the intestate laws, and there is no evidence of fraud in the transaction, the nephew has no standing thereafter in a court of equity to have the agreement revoked and canceled.

In such a case the fact that under the agreement, following the unsigned will, certain moneys were made payable to the daughters of the uncle, is immaterial.

A provision in the agreement that the uncle shall take to himself absolutely as his own property a mortgage particularly described, and execute such transfers as are necessary to ensure the same to him individually, is not executory in character at the time of the filing of the bill, if it appears that at the date of the bill the uncle had physical possession of the mortgage.

Argued Dec. 5, 1907.  Appeal, No. 68, Oct. T., 1907, by plaintiff, from decree of C. P. Montgomery Co., March T., 1906, No. 1, dismissing bill in equity in case of Alvah F. Conrad v. Thomas C. Conrad.  Before Rice, P. J., Porter, Henderson, Morrison, Orlady, Head and Beaver, JJ.  Affirmed.

Bill in equity to cancel an agreement in writing.

From the record it appeared that the agreement was as follows:

"Whereas Mary H. Thomas, late of No. 804 DeKalb street, Norristown, Pa., died January 31st, A. D. 1906, intestate, leav-

ing surviving as her next of kin, a son, Thomas C. Conrad, and a grandson, Alvah F. Conrad, both of full age.

"And whereas, the said decedent, with the knowledge of her family, had certain instructions with regard to the distribution of her estate, which her heirs at law are desirous of carrying out.

"Now, in consideration of the premises, and as a family agreement in said estate, and for the purpose of controlling and directing the distribution thereof, it is hereby agreed,

"1st, That Thomas C. Conrad shall take out letters of administration on said estate.

"2d, That said administrator shall not inventory or account for the household furniture, wearing apparel or jewelry of the decedent, but shall deliver to Alvah F. Conrad the old dressing table with drawers, and distribute the balance among his three children and their mother.

"3d, That said administrator shall take to himself absolutely as his own property, the Hanley mortgage of $1000.00, and execute such transfers as are necessary to assure the same to him individually.

"4th, That said administrator shall pay the debts of the decedent, and the expenses of administration, account and settlement, and out of the net balance due the estate, shall take and pay the following sums, to wit:

| | |
|---|---|
| To Frances E. Clemmer | $150 00 |
| To Alvah F. Conrad | 150 00 |
| To himself in trust for Ethel S. Conrad | 150 00 |
| To himself in trust for Belle T. Conrad | 150 00 |
| To Alvah F. Conrad on his executing a written promise to pay to Ruth Ann Hamilton, One 50–100 Dollars per annum, during her life | 25 00 |
| To himself on his executing a written promise to pay Ruth Anna Hamilton Four 5–100 Dollars per annum during her life | 75 00 |

"Note: On the death of Ruth Anna Hamilton he is to pay Twenty-five Dollars to each of his said three children.

"5th, The balance remaining after the payment of these sums is to be equally divided between the said Thomas C. Conrad and said Alvah F. Conrad.

156          CONRAD, Appellant, v. CONRAD.

Statement of Facts—Opinion of Court below. [36 Pa. Superior Ct.

"Witness our hands and seals this sixth day of February, A. D. 1906.

"THOMAS C. CONRAD.   (Seal.)

"ALVAH F. CONRAD.   (Seal.)

"Signed, sealed and delivered
   in presence of us:
"Henry Freedley."

SWARTZ, P. J., filed the following opinion:

### FINDINGS OF FACTS.

1. Mary H. Thomas was the mother of Thomas C. Conrad and grandmother of Alvah F. Conrad. Her next of kin are the said Thomas C. Conrad and the said Alvah F. Conrad. Frances, Belle and Ethel are the children of Thomas C. Conrad. Alvah F. is the only child of Frances H. Conrad, deceased. Under the intestate laws the said Thomas C. Conrad and Alvah F. Conrad would each take one-half of the estate of the said Mary H. Thomas, deceased.

2. Ethel and Belle are minors and their father was appointed guardian ad litem for them.

3. Alvah F. Conrad lived with his grandmother. He came to her when he was nine years old and he is now twenty-four. She supported him for eleven years.

4. On the day of Mrs. Thomas's death a paper was found in her desk and in her own handwriting disposing of her property. At the head of the paper she wrote the words, "My Will." To her son Thomas she gave a mortgage of $1,000 and divided $600 equally among her four grandchildren, Frances, Belle, Ethel and Alvah. She made other bequests of household goods and gave to her sister the income from $100 for life, at her death the principal to the four grandchildren. She failed to sign the paper. The estate consists of personalty, and its appraised value according to the inventory filed is $2,300.

5. Mrs. Thomas died on January 31, 1906, and on February 6 following, Thomas C. Conrad and Alvah F. Conrad took the unsigned paper to the office of Henry Freedley, Esq., a member of this bar. They were accompanied by the brother of the de-

cedent.  Mr. Freedley had been counsel for Mrs. Thomas for some years.  Both Alvah and his uncle, Thomas C., inquired of Mr. Freedley whether the paper could be probated as the will of Mrs. Thomas.  He replied that the paper was of no avail as a will, because of the absence of the signature.  Both expressed regret and a search was then instituted for a will at the Penn Trust Company and at the office of Judge Solly, who had acted for Mrs. Thomas in some matters prior to his elevation to the bench.  No will was found.

6. Mr. Freedley explained to the parties that inasmuch as they were the only parties interested and as there were no debts they could agree to a distribution of the estate in accordance with the terms of the unsigned paper, but that this must be done through an administration.  Both parties readily assented to this proposition and the paper in controversy was then signed.  The agreement embodied all the provisions of the unsigned paper and concluded with the clause that any balance remaining after the payment of the sums named shall be divided equally between the said Thomas C. Conrad and the said Alvah F. Conrad.

7. The agreement was carefully read by both parties before their signatures were attached.  Alvah F. knew at the time he signed the paper that under the intestate laws he was entitled to one full half of his grandmother's estate.  Mr. Freedley so explained the law to him, and between the time of the explanation and the actual signing of the paper Alvah F. stated at the family dinner table that he supposed his grandmother gave his uncle the mortgage to balance up for the many years she had maintained him, the said Alvah.  At the time of the signing of the agreement Mr. Freedley made a calculation to determine the balance that would be left after the provisions of the unsigned will were satisfied.  Alvah F. was again informed that he and his uncle under the law shared this balance equally.

8. There is no evidence of any confidential relationship existing between Alvah F. and his uncle, nor is there any evidence of fraud or undue influence in obtaining the signatures of Alva F. to the paper he now seeks to set aside.  He is an intelligent young man and signed the paper because it was his desire to

respect the wishes of his grandmother as expressed in the unsigned paper found in her dressing table, and because he considered her distribution fair and just.

9. Alvah F. received no pecuniary consideration for his signature to the paper. He expressed no dissatisfaction with the agreement before this bill was filed, but it is not shown that Thomas C. Conrad did anything during the month and one half in pursuance of the agreement that would be prejudicial or detrimental to him should the paper now be canceled as prayed for in the bill.

10. The agreement sets forth that the parties were desirous to carry out the distribution of the estate in accordance with the instructions of Mrs. Thomas. The agreement is under seal. It purports to be a family agreement to control the distribution of the estate.

11. The agreement provides that Thomas C. Conrad shall take to himself absolutely as his own property the Hanley mortgage of $1,000 and execute such transfers as are necessary to assure the same to himself individually. By a previous clause in the agreement Thomas C. Conrad was to be the administrator. He did so administer and took possession of the assets of the estate. The Hanley mortgage was taken to Mr. Freedley, it was handed to him by Thomas C. Conrad for collection.

CONCLUSIONS OF LAW.

1. Under our findings of facts the paper cannot be set aside or canceled upon the ground that the plaintiff was ignorant of his rights at the time he signed the agreement, nor can it be set aside upon the allegation of fraud or undue influence because there was no evidence of their existence.

2. The kinship of uncle and nephew does not of itself constitute a confidential relationship; there must be some evidence of trust and confidence before a confidential relationship arises between them.

3. As Alvah F. Conrad fully understood his rights and the effect of the transfer of his interest in the Hanley mortgage, equity will not disturb the executed agreement. The mortgage

was fully delivered in accordance with the provisions of the agreement.

4. The sealed instrument having been made with the intent to carry out the wishes of Mrs. Thomas as to the disposition of her property and the plaintiff having signed the same not only because he believed it expressed his grandmother's desire, but also because he considered the disposition fair and just to his uncle, equity will not relieve him from doing that which he agreed to and that which in good conscience he ought to do.

5. The estate had vested upon the death of Mrs. Thomas. Alvah F. Conrad had more than an expectancy; he was an owner and could dispose of his property as he saw fit, by gift or otherwise, uninduced by any pecuniary consideration. His transfer is beyond the power of revocation because the consideration was sufficient to support it even so far as it concerned the shares made payable to the nieces.

6. The bill should be dismissed at the costs of the plaintiff.

ARGUMENT IN SUPPORT OF OUR FINDINGS AND CONCLUSIONS.

We are satisfied that Alvah F. Conrad fully understood his rights when he signed and sealed the agreement. His rights were explained to him by counsel. His conversation at the dinner table shows that he understood what he was doing. His uncle heard the explanation at Mr. Freedley's office and the calculation exhibited to Alvah showing the distribution of the balance of the estate into two equal shares also conveyed to a man of his intelligence a true knowledge of his rights under the intestate laws. He not only knew his rights, but he was anxious to see his grandmother's estate distributed according to what he believed was her wishes and expressed intent. He also recognized the justice and equity of her distribution of the estate. He knew that he had for years enjoyed her beneficence in the support and maintenance she furnished him. No doubt outside influence induced him to recall the act which his own judgment approved at the time the paper was executed.

There is no evidence of undue influence or that any fiduciary or confidential relationship existed at the time the paper was signed.

The Hanley mortgage was in the possession of Thomas C. Conrad on the very day the agreement was made. He administered and then passed the mortgage to counsel for collection. There could be no purpose in handing the mortgage to Mr. Freedley other than a desire to recover the proceeds for himself. The agreement provided that Thomas C. Conrad should take this mortgage to himself absolutely as his own property. When he had possession of the paper he held it as his individual property and not as a part of the estate of Mrs. Thomas for administration. The transfer was as fully executed as the existing conditions made it possible. There was a delivery of the paper according to the terms of the agreement. All parties in interest may divide the property of an intestate without administration; the property passes to those legally entitled at the death of the intestate, subject to the claims of creditors: Roberts v. Messinger, 26 W. N. C. 70 (Supreme Court case). If they may divide the whole estate without administration, it follows that they may dispose of any part thereof in the same way. The delivery was therefore complete so far as the Hanley mortgage is concerned. Whether the agreement, so far as this mortgage is concerned, be termed a gift or assignment of family settlement, it was fully executed before the bill in equity was filed: Delamater's Estate, 1 Wharton, 362.

This instrument does not, as counsel for the plaintiff argues, transfer an expectancy. If it did it would require an actual consideration to support it: Lenneg's Estate, 182 Pa. 485. Alvah F. Conrad and his uncle were the owners of all the assets of the estate at the time the agreement was signed. No one without their consent could take from them that which the law vested in them upon the death of Mrs. Thomas. They held this title subject to the claims of creditors alone. There are no creditors so far as there is any testimony before us. It is conceded that at the time of the execution of the paper the two persons owned all the estate; that there were no debts of the decedent. "The perfect right of a proprietor to divest himself of his estate by way of gift uninduced by pecuniary consideration is among those which do not admit of question, and when such a gift is executed or otherwise fixed in the bene-

ficiary, either by the direct conveyance of an estate or the creation of an use, it is beyond the power of the donor or his representative to revoke it:" Rynd v. Baker, 193 Pa. 486.

We are of opinion that equity will not interfere to revoke any part of the agreement even as to such parts that may still be considered executory. There is a marked difference between an application to the chancellor to revoke or cancel a contract and an application to aid in its execution. He may refuse to execute and yet decline to revoke. If Mrs. Thomas by accident failed to sign the paper headed "my will" or failed by accident to carry out her purpose to do justice to her son in the distribution of her estate and Alvah from a settled conviction signed the paper to do for his uncle what his grandmother failed by accident to do, and if his purpose was to repair the wrong resulting from intestacy then the moral obligation cast upon him would be a consideration to support even an executory agreement: Delamater's Estate, 1 Wharton, 362. At least equity will not help him to escape from the great obligation he had assumed with full knowledge and without any fraud, mistake or undue influence. We think the same principle is recognized in Hart's Estate (No. 3), 203 Pa. 492. In Lennig's Estate, 182 Pa. 485, an agreement by the heirs to change the distribution of the estate divided by the testator was defeated because the agreement was executed before the testator died and was an attempt on the part of the children to dispose of an expectancy, something that they did not own; this could not be sustained in the absence of a valuable consideration. The court said: "If the paper could be sustained as a gift it would answer the purpose, but that cannot be, because the thing given had no existence and as a gift under all the authorities, it cannot be sustained." Alvah F. Conrad did have something to give because he and his uncle owned the estate of Mrs. Thomas upon her death. In Mechling's Appeal, 2 Grant, 157, the heir prospectively agreed to release and did so in ignorance of the most material facts in the case, and the court refused to sustain the agreement. In the case before us there is an express direction to pay to each of the nieces $150, and the administrator who had the custody

of the funds is directed to make the payment. It is the transfer or assignment of an existing fund in which Alvah F. Conrad had a present interest. Nothing remained to be done by him to give to the nieces title to the fund: Lambe v. Orton, 1 Drew. & Sm. 125, 29 L. J. ch. 319.

It is competent for the devisees and legatees under a will to bind themselves by an agreement to destroy the will and to distribute the estate under the intestate laws: Phillips v. Phillips, 8 Watts, 195. Why is not the converse allowable? The principle involved is the same where all the heirs agree to avoid intestacy and to distribute the estate according to their ideas of justice and fairness among themselves, and according to the wishes of the decedent as expressed by her.

While the agreement may not in strictness be termed a family agreement or settlement, still it has some of the features that belong to these favored settlements. One purpose is to preserve harmony among the members of the family. Surely this agreement had in view that purpose. To refuse to divide the estate in accordance with the written request of the decedent would certainly tend to estrange the parties and bring about discord. If Alvah had taken one full half of the estate in addition to benefits already received from his grandmother, his uncle, no doubt, as well as his children, would have regarded such act as grasping and unjust to themselves.

The parties in their agreement set forth that the paper was executed as a "family agreement." If they designated the contract by that name we do not see why the court should altogether overlook or disregard their interpretation of the contract. Their motive in making the paper must have been known to themselves, while we can do no more than draw an inference as to these motives.

A man may transfer his property without valuable consideration by acts that amount in law to a conveyance and assignment of the property and then completely divest himself of the legal ownership; in such case the person who by those acts acquires the property takes it beneficially or in trust as the case may be: Smith's Estate, 144 Pa. 428. By the agreement the uncle was made the custodian of the funds payable to the

nieces. He took possession of the same and still holds them in trust to pay over the same as directed by the plaintiff.

If, however, the agreement so far as it concerns the nieces is executory and the motive which induced the plaintiff to sign it do not constitute a sufficient consideration to support it, still equity cannot order the cancellation of the paper. In the absence of fraud, accident or mistake equity will not interfere. The paper is just what the plaintiff intended it to be under the full understanding of his rights and interests in the estate. The orphans' court is the proper tribunal to determine what effect it shall have in the distribution of the estate of Mary H. Thomas.

And now, July 2, 1906, the prothonotary will enter a decree nisi dismissing the bill at the cost of the plaintiff and unless exceptions are filed to our findings and conclusions as required by the equity rule he will enter a final decree accordingly as of course.

*Error assigned* amongst others was decree dismissing the bill.

*Edwin S. Nyce*, for appellant.—The agreement in this case is almost similar to the one in Mechling's Appeal, 2 Grant, 157, which was declared executory. See also Pringle v. Pringle, 59 Pa. 281; Bayler v. Com., 40 Pa. 37; Lennig's Estate, 182 Pa. 485.

An executory contract, without consideration, is not enforceable and is revocable: Lewis's Estate, 21 Pa. Superior Ct. 393; Mechling's App., 2 Grant, 157; Lennig's Estate, 182 Pa. 485; Davidson v. Little, 22 Pa. 245; Smith's Estate, 144 Pa. 428.

*Henry Freedley*, for appellees, cited: Smith's Estate, 144 Pa. 428; Wagoner's Estate, 174 Pa. 558.

OPINION BY RICE, P. J., April 20, 1908:

This and the succeeding case may be considered together. The first was a suit in equity brought to obtain cancellation

of a certain agreement between the two heirs of the estate of Mary H. Thomas, which after a full trial upon the merits resulted in a decree dismissing the bill. The second was an adjudication in the orphans' court of the estate of Mary H. Thomas, in which the same agreement was set up by the appellees and held by the court to control the distribution. Alvah F. Conrad is the appellant in both cases.

In the appeal in the equity case the first five assignments of error relate to findings upon questions of fact involving conflicting testimony. It is argued upon the first assignment that there was no competent evidence to support the finding therein recited. We cannot agree with this contention. The testimony of Thomas C. Conrad and of Mrs. Clemmer, if believed, taken in connection with the plaintiff's admission upon cross-examination that he had lived with his grandmother from the time his father died, was sufficient to warrant the finding. It is suggested further that, inasmuch as in sustaining the objection of the plaintiff's counsel to a question put to the plaintiff upon cross-examination as to his having been supported by his grandmother the trial judge stated that he did not think that was material, the plaintiff was not called upon to rebut the testimony of the defendant upon that subject subsequently given without objection, and therefore no finding should have been based thereon. But we think, if error was committed, it was in sustaining the objection above referred to of plaintiff's counsel, not in receiving, and basing a finding upon, the subsequent testimony of the defendants. This was competent testimony, and the judge had said nothing in his former ruling which would have precluded him from receiving and considering it, even if it had been objected to.

The other findings of fact are supported by competent and, if believed, sufficient testimony. The trial judge had better opportunity than we have to judge of the credibility of the witnesses. Upon full consideration of all of the testimony and of the argument of appellant's counsel in support of his contention, we are unable to say that any of the findings is not in accordance with the fair preponderance of the testimony and the legitimate inferences of fact deducible therefrom. There-

fore, applying the well-settled and familiar rule upon the sub-ject, these findings must be accepted, as embracing the facts of the case. This being so the conclusion of the learned judge that a case was not made out in which a court of equity would cancel the agreement clearly and logically follows.

We are of the opinion also that under the facts found by him he was right in his conclusion that the agreement, so far as the Hanley mortgage is concerned, was not to be treated as execu-tory at the time the bill in equity was filed; in other words, that the transfer of the mortgage to Thomas C. Conrad, which by the agreement he was to take to himself absolutely as his own property, was as fully executed, as "was necessary" to adopt the words of the agreement, "to assure the same to him individually."

As to the provision of the agreement in favor of the plaintiff's nieces there is more room for argument. But even as to that provision, we are not convinced that the court erred in conclud-ing that the agreement was "beyond the power of revocation, because the consideration was sufficient to support it even so far as it concerned the shares made payable to the nieces." This conclusion is supported by an exhaustive and well-con-sidered opinion of the learned trial judge, in which the very material distinctions between this case and Lennig's Est., 182 Pa. 485, and Mechling's Appeal, 2 Grant, 157, upon which the appellant's counsel relies, are pointed out. With regard to Mechling's Appeal, which comes more nearly to the pres-ent case than any other which has been cited, it should be observed, that the agreement therein set up was made between the administrator after his appointment, and when there was a relation of trust and confidence between him and the other party to the agreement, not as here, where by the very terms of the agreement the defendant took upon himself the respon-sibility of administration, and had proceeded with his duties in that regard and in regard of the execution of the other stipu-lations before the bill in equity was filed. That we have not misinterpreted that decision is apparent from the following quotation from the opinion of Justice READ, " Such an ar-rangement between a trustee and a cestui que trust, could

not be sustained for a moment, and its invalidity vitally affects the voluntary direction to pay to the brother and sisters of her son, given in palpable ignorance of the extent and value of her interest in the estate of the decedent." No such principle is applicable here, as is clearly shown by the opinion of the learned judge below. We cannot profitably add anything further to the discussion, and no good purpose would be served by repetition in our own words of his reasoning in support of the conclusion which we have quoted above.

The decree is affirmed at the costs of the appellant.